UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ALEJANDRO GOMEZ,

      Plaintiff,

vs.

A. DIAZ, *et al.*,

      Defendants.

Case No. 1:11-cv-00461-RRB

<u>**DISMISSAL ORDER**</u>

      Alejandro Gomez, a state prisoner appearing *pro se* and *in forma pauperis*, filed a civil rights action under 42 U.S.C. § 1983 against thirteen named defendants.[1] Gomez is currently in the custody of the California Department of Corrections and Rehabilitation incarcerated at the Salinas Valley State Prison ("SVSP"). This action arise out of incidents that occurred while Gomez was incarcerated at the California State Prison–Corcoran ("CSP").

## I.      GRAVAMEN OF COMPLAINT

      Gomez's action arises out of his confinement in the Special Housing Unit ("SHU") in administrative segregation at CSP. Gomez does not challenge his initial confinement in the

---

[1]  In addition to A. Diaz (Correctional Lieutenant), Gomez named: R. Davis (Chief Deputy Warden (A)); R. Chavez (Correctional Counselor II); R. Schneider (Correctional Counselor I); I. Bueno (Correctional Sergeant); T. Cano (Appeals Coordinator); J. Jones (Appeals Coordinator); M. Junious (Chief Deputy Warden); M. Jennings (Correctional Captain); D. DeAvecedo (Correctional Counselor II); K. Comaites (Chief Deputy Warden (A)); T. Pasion (Correctional Counselor I); and M. Cisneros (Correctional Counselor II).

SHU. Instead, it appears that Gomez alleges that his continued incarceration in the SHU for a period of approximately four (4) months beyond his original scheduled Minimum Eligible Release Date ("MERD") releasing him back to the general population was in retaliation for filing grievances against correctional officers. Gomez further contends that he did not receive hearings before the Inmate Classification Committee within the time limits prescribed by the regulations. Gomez argues that the actions of the Defendants, individually and collectively, denied him due process of law, redress of his grievances, and constituted cruel and unusual punishment in violation of the First, Eighth, and Fourteenth Amendments.

His Complaint is also replete with conclusory descriptive adjectives, e.g., "despicable, knowingly, willful, malicious, and/or carried out with reckless disregard for Plaintiff's federally protected rights," and "threats of retribution, retaliation, discrimination" due to the filing of grievances and Gomez's affiliation with the Fresno Bulldogs.

Gomez appended to his Complaint twenty-one (21) exhibits, including as relevant to screening the allegations raised in his complaint, copies of the Director's Level Appeal Decisions dated December 29, 2008, June 2, 2009, and May 19, 2010. Excerpts of those decisions are as follows:

*First Director's Level Appeal (December 29, 2008).*

**I    APPELLAN'T S ARGUMENT**: The appellant is submitting this appeal relative to CDC Form 115, Rules Violation Report (RVR), Log #3A-08-04-026, dated April 16, 2008, for Possession of a Weapon.  It is the appellant's position that the Senior Hearing Officer (SHO) had a predetermined belief of the appellant's guilt because at his initial Institution Classification Committee (ICC) hearing the SHO retained him in the Administrative Segregation Unit (ASU) for this offense. Additionally  the Investigative Employee (IE) failed to provide the

appellant with copies of the photographs referenced in the CDC 837, Crime/Incident Report, the photographs were not presented at the hearing, and the SHO made assumptions based upon the appellant's Bulldog status. The appellant requests that the RVR be dismissed.

* * * *

**III DIRECTOR'S LEVEL DECISION**:  Appeal is denied.

    **A.   FINDINGS**: The documentation and arguments presented are persuasive that the appellant was afforded disciplinary due process and was found guilty by the SHO based upon the preponderance of evidence presented during the hearing. Upon review of the documentation presented, it is determined that the appellant's arguments are without merit.

The review revealed that all time constraints were met and !he appellant received a copy of all documentation relied upon in the hearing at least 24 hours prior to the hearing. The appellant did not meet the criteria lo be assigned a Staff Assistant pursuant to the California Code of Regulations, Title 15, Section (CCR) 3315 and waived the assignment of an IE.  No witnesses were requested by the appellant or the SHO.

The appellant has failed to present a persuasive argument or any compelling evidence to warrant a favorable decision in his behalf. During the disciplinary hearing the appellant pled guilty and stated, "The weapon was mine. My cellie didn't know anything about it." The appellant's claim that he was not provided with copies of the photographs and the photographs were not presented at the hearing is without merit as he was provided with the opportunity to view the evidence photographs more than 24 hours prior to the hearing. Pursuant to a CDC Form 128-B dated May 13, 2008, the appellant was provided with the opportunity to view the evidence photographs referenced in the CDC 837, He demanded to keep the photographs and refused to sign the CDC Form 128-B signifying that he viewed the photographs when his demand was denied.

The appellant's contention that the SHO (Correctional Lieutenant A. Diaz) had a preconceived belief of his guilt because the SHO was part of the appellant's Initial ICC is without merit.  As indicated at the Second Level of Review, review of the CDC Form 128-G dated April 25, 2008, does not reflect that the SHO was a participant at the ICC hearing. Additionally, review of the CDC Form 128-G at the Director's Level of Review does not indicate evidence of predetermined belief of the appellant's guilt.  During the ICC on April 25, 2008, the committee noted that the appellant was initially placed in the ASU for Possession of a Deadly Weapon and that he is being retained in the ASU pending

adjudication of the RVR for this offense.  Based upon this information, if the SHO had been present during the ICC on April 25, 2008, there is no evidence of a predetermined belief of the appellant's guilt by the committee members.

In review of the hearing disposition the SHO notes, "It should also be noted that at the time frame of discovery, the Fresno Bulldogs were at the peak of the ongoing gang violence with the Southern Hispanic inmates in which both factions were using stabbing weapons to assault each other. Both inmate Gonzalez and inmate Gomez are members of the Fresno Bulldogs. This would corroborate inmate Gomez' admission of guilt. The appellant has admitted that he is a Bulldog and has not provided any evidence to dispute this information provided by the SHO.[2]

*Second Director's Level Appeal (June 2, 2009)*

I      **APPELLANT'S ARGUMENT**: It is the appellant's position that the California State Prison, Corcoran (COR) classification committee has violated his Constitutional Rights by not scheduling him for an Initial Appearance before the Institution Classification Committee (ICC) nor a Pre-MERD review. The appellant filed a citizen's complaint against all officials responsible for the classification and housing of inmates within Facility "4B" Security Housing Unit (SHU). The appellant requests immediate release to the COR Level IV general inmate population (GIP) and to be reimbursed $150.00 for each day that he has been illegally held in the Administrative Segregation Unit (ASU)/SHU.

* * * *

III     **DIRECTOR'S LEVEL DECISION**:  Appeal is denied.

A.  **FINDINGS**:  The documentation contained in the appellant's appeal reveals that the appellant was initially placed into the ASU on April 16, 2008, for the specific act of Possession of a Weapon. The appellant was retained in the ASU pending the completion of his disciplinary process, which resulted in the assessment of a 10-month determinate SHU term with a MERD of December 1, 2008.

During a program review that was conducted on December 18, 2008, as a result of the appellant's completion of his MERD, ICC elected to impose an Indeterminate SHU term based upon the appellant's continued disruptive behavior.  ICC referred the appellant's case to the CSR, who on January 21, 2009, conducted a SHU audit and endorsed the appellant lo serve an Indeterminate SHU term at COR SHU.  While

---

[2]  Docket 1, pp. 31–32.

the CDC Form 128-G, Classification Chrono dated December 18, 2008, is after the appellant's original MERD of December l, 2008, his retention in the SHO as a result of his history of disruptive behavior, which was determined to pose a threat to the safety and security of the institution is not viewed as a violation of any due process rights or liberty interest of the appellant. Therefore, no violation of the appellant's due process rights occurred and the retention of the appellant within the SHU beyond his MERD while awaiting the CSR's review of the Indeterminate SHU recommendation of the ICC is consistent with the regulations cited herein. As for the appellant's request for monetary compensation, this request is beyond the scope of the inmate appeals process and will not be discussed at the Director's Level of Review.[3]

Third *Director's level Appeal Decision (May 19, 2010)*

I       **APPELLANT'S ARGUMENT**:  It is the appellant's position that he has been improperly retained in the Corcoran State Prison (COR) Administrative Segregation Unil (ASU) while staff "clear up" his enemy situation at Salinas Valley State Prison (SVSP). He states he can be released to the "3-A" yard while they sort things out.  He has completed his Security Housing Unit (SHU) term and an indeterminate term and has no pending CDC Forms 115, Rules Violation Reports. He requests a group yard for "Bulldogs" in the ASU. The appellant requests immediate release from the ASU and a "Bulldog" group yard.

*       *       *       *

III      **DIRECTOR'S LEVEL DECISION**:  Appeal is denied.
        **A.  FINDINGS**: At the Director's Level of Review (DLR), the appellant states he was held in the COR ASU "illegally" due to enemy concerns at SVSP that could have been cleared up months prior to his release from the COR SHU. He asserts that his enemy concerns were not cleared up in retaliation for filing multiple appeals about COR staff.
        The appeals examiner notes that there is no requirement for staff to "clear up" potential enemy concerns prior to an inmate's release fron1 SHU since the enemies may move prior to the affected inmate1s release. In addition, the Classification Staff Representative (CSR) makes a determination about transfer following Institution Classification Committee action and a transfer recommendation would not have not been made prior to the appellant's SHU Minimum Eligible Release Date. The documentation submitted with the appeal shows that COR staff

---

[3]  Docket 1, p. 43.

attempted to house the appellant at COR JV 270 due to his enemy concerns, but were directed by CSU to work with SVSP staff to address the enemy situation at that institution. There is no proof that COR staff acted improperly or deliberately delayed the appellant's ASU release. The examiner finds that there is no evidence to support the appellant's claims of retaliation.  No relief is warranted at the DLR.[4]

## II.    SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[5] This Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."[6]

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[7] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[8] Failure to state a claim under § 1915A incorporates the familiar standard applied in Federal

---

[4]  Docket 1, p. 100.

[5]  28 U.S.C. § 1915A(a).

[6]  28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); *see Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[7]  Fed. R. Civ. P. 8(a)(2).

[8]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se* prisoners are to be liberally construed, affording the prisoner the benefit of any doubt, and dismissal should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[9]

This requires the presentation of factual allegations sufficient to state a plausible claim for relief.[10]  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[11] Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[12]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[13]

## III.    DISCUSSION

In order to state a cause of action for violation of procedural due process, a prisoner must first establish the existence of a liberty interest within the scope of the protection of the Fourteenth Amendment.[14]  Liberty interests may arise from the Due Process Clause itself, or

---

[9]  *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

[10]  *Iqbal*, 556 U.S. at 678–69; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

[11]  *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[12]  *Id.*

[13]  *Id.* (quoting *Twombly*, 550 U.S. at 555).

[14]  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

state law.[15] The Due Process Clause, standing alone, does not confer a liberty interest in prisoners being confined in the general prison population instead of administrative segregation.[16] With respect to liberty interests arising under state law, the liberty interest by prison regulations is determined by focusing on the nature of the deprivation.[17] Liberty interests affected by prison regulations are limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[18] Confinement in a SHU does not rise to this level.[19]

Furthermore, "the requirements of due process are satisfied if some evidence supports the decision by the prison [officials]."[20] Here it is clear that the Director's Level Decisions were supported some evidence, independent of any alleged impropriety on the part of the Defendants, warranting Gomez's continued placement in the SHU.

Although not entirely clear from the Complaint, it appears that Gomez claims that he was held in the SHU in retaliation for the filing of CDCR 602s.  It is well-established in this

---

[15]  *See Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983).

[16]  *Id.*

[17]  *Sandin v. Conner*, 515 U.S. 472, 481–84 (1995).

[18]  *Id.* at 484.

[19]  *See Sandin*, 515 U.S. at 486 (disciplinary confinement does "not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); *see also May v. Baldwin,* 109 F.3d 557, 565 (9th Cir. 1997) ("[A]dministrative segregation falls within the terms of confinement ordinarily contemplated by a sentence."); *Anderson v. County of Kern,* 45 F.3d 1310, 1315 (9th Cir. 1995) ("no liberty interest in remaining in the general population" of prison).

[20]  *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985).

Circuit that a prisoner's rights to file prison grievances and to pursue civil rights litigation in the courts are protected by the First Amendment.[21]  Likewise, retaliatory actions by prison officials are cognizable under § 1983.[22]

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.[23]

The insurmountable hurdle Gomez faces is that each of the CDR 602s involved were, in fact, processed and denied on the merits at the third-level of review. The adverse action in this case was the continuation of Gomez's confinement in the SHU. The record clearly establishes that the action taken did not a result from protected conduct, did not have a chilling effect on his exercise of his First Amendment right to file a grievance, nor did it fail to advance a legitimate correctional goal.  Thus, even accepting that the statements alleged to have been made were in fact made, i.e., that filing a CDCR 602 would be futile, taken in the context the proceedings in the record, those statements were more predictive than threatening.  At most, the allegations in the complaint are based upon Petitioner's "belief" that the denial of his grievances were retaliatory in nature. The record is utterly devoid of any factual basis for the retaliation claim. This Court cannot grant relief based upon a petitioner's "belief" supported

---

[21]  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

[22]  *Id.*

[23]  *Id.* at 567–68 (footnotes and internal citations omitted).

solely by conjecture and supposition; especially where, as here, the objective evidence clearly and unequivocally undercuts that "belief."

The Eighth Amendment is violated only when two requirements are met:   (1) "the deprivation alleged must be objectively sufficiently serious"; and (2) the "act or omission must result in the denial of the minimal civilized measure of life's necessities."[24]  Confinement in a SHU does not rise to that level.[25]

To the extent that Plaintiff alleges that the actions of Defendants violated state law, § 1983 does not provide a cause of action for those claims.[26]  In addition, Plaintiff must show compliance with the presentment requirements of the California Tort Claims Act.[27]  It does not appear that Gomez met that requirement.

---

[24]  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted).

[25]  *See Anderson*, 45 F.3d at 1316 ; *see also Pina v. Scavetta*, 467 Fed. Appx. 605, 606 (9th Cir. 2012) (unpublished) (citing *Anderson*); *Ruiz v. Cate*, 436 Fed. Appx. 760, 761 (9th Cir. 2011) (unpublished) (same).

[26]  *Loftis v. Almagar*, 704 F.3d 645, 647 (9th Cir. 2012) (*citing Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).  Gomez's allegations that he did not receive an ICC hearing within ten (10) days of his arrival or within thirty (30) days prior to his December 1, 2008, MERD, and that he was held beyond his MERD without an appropriate lock-up order constitute nothing more than violations of state regulations that do not rise to the level of a constitutional violation cognizable under § 1983.

[27]  *See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 627 n.4 (9th Cir. 1988).

With respect to his claim regarding the failure to return his personal property, it is clear from the Complaint and its attachments that Gomez's property has been returned to him. Consequently that matter is rendered moot.

## IV.    CONCLUSION/ORDER

Although this Court would normally grant leave to amend, it appears in this case that Gomez cannot plead any plausible set of facts that would entitle him to relief in any form in a federal court.[28]   Indeed, the record appended to the Complaint reflects that the allegations of misconduct are predicated upon mere suspicion, surmise, and conjecture, unsupported by any factual allegations. Accordingly, the Complaint herein is hereby **DISMISSED** in its entirety as against all Defendants, without leave to amend.

This Court, having fully considered the matter finds that reasonable jurists could not disagree with this Court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Accordingly, any appeal would be frivolous or taken in bad faith.[29] Accordingly, Gomez's *in forma pauperis* status is hereby **REVOKED**.

---

[28]   *See Hartman v. California Dept. of Corr. and Rehab.*, 707 F.3d 1141, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.").

[29]   28 U.S.C. § 1915(a)(3);  *see Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002) (revocation of *in forma pauperis* status is appropriate if the appeal is frivolous).

The Clerk of the Court is directed to enter judgment of dismissal, with prejudice, which states that the dismissal counts as a "strike" under 42 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 3rd day of November, 2014.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE